1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11 | RODNEY T. BURKS,                          ) Case No.: 1:12-cv-00918 LJO GSA HC
                                               )
12 |                    Petitioner,            ) FINDINGS AND RECOMMENDATION
                                               ) REGARDING PETITION FOR WRIT OF HABEAS
13 |        v.                                  ) CORPUS
                                               )
14 | M. CATE, Secretary,                        )
                                               )
15 |                    Respondent.            )
                                               )
16 | _____      )

17          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18  pursuant to 28 U.S.C. § 2254.

19                              **BACKGROUND**

20          Petitioner is currently in the custody of the California Department of Corrections and

21  Rehabilitation pursuant to a judgment of the Superior Court of California, County of Fresno, following

22  his conviction by plea of no contest on July 6, 2006, for carjacking, assault with deadly force by

23  means likely to produce great bodily injury, driving in willful and wanton disregard for safety of

24  persons while fleeing from pursuing police officer, theft of a vehicle, and elder abuse.  On August 21,

25  2006, Petitioner was sentenced to serve a total prison term of sixty-four years to life.

26          Petitioner timely filed a notice of appeal.  On July 20, 2007, the California Court of Appeal,

27  Fifth Appellate District ("Fifth DCA"), modified the judgment by staying the sentences for the counts

28  of assault and elder abuse, and the attendant great bodily injury enhancements.  The judgment was

                                                    1

1    affirmed in all other respects.  Petitioner did not seek review in the California Supreme Court.

2          On December 9, 2007, Petitioner filed a petition for writ of habeas corpus in the Fresno County

3    Superior Court.  The petition was denied on January 4, 2008.  He then filed a habeas petition in the

4    Fifth DCA on March 18, 2008.  On July 16, 2009, the petition was denied without prejudice to

5    Petitioner filing a petition in the superior court.  On October 12, 2009, Petitioner returned to the

6    Fresno County Superior Court with a second petition for writ of habeas corpus.  The petition was

7    denied on December 9, 2009.  Petitioner then filed a habeas petition in the Fifth DCA, and the petition

8    was denied on June 16, 2011.  Finally, Petitioner filed a habeas petition in the California Supreme

9    Court.  On April 11, 2012, the petition was denied.

10         On June 6, 2012, Petitioner filed the instant federal habeas petition in this Court.  The petition

11   presents three claims for relief.  Petitioner first alleges he received ineffective assistance of counsel

12   because defense counsel: (1) failed to inform Petitioner that the victim had identified someone other

13   than Petitioner in the photo-lineup; (2) erred in advising Petitioner of the maximum sentence he faced;

14   (3) failed to secure Petitioner's parole officer as a witness at the sentencing hearing; (4) failed to

15   object to prejudicial statements made by the prosecutor during sentencing; and (5) failed to make an

16   adequate record that the plea bargain Petitioner entered into was made with the understanding that

17   Petitioner would be sentenced to no more than twenty-five years to life.  Petitioner also contends the

18   trial court erred in calculating his maximum sentence and then sentenced him to a greater term than

19   that agreed upon in the plea agreement.  Finally, he claims appellate counsel rendered ineffective

20   assistance by failing to raise the afore-mentioned issues on appeal.  On May 23, 2013, Respondent

21   filed an answer to the petition.  On August 12, 2013, Petitioner filed a traverse.

22                              **STATEMENT OF FACTS**

23         At approximately 5:19 a.m., on March 25, 2006, police officers, investigating a
     carjacking report, made contact with William Lekel[1], who was bleeding heavily. Lekel told the
24   officers the following. He was unlocking the gate of the car dealership at 621 Van Ness
     Avenue in Fresno, California, where he worked, when an African-American man approached
25   and greeted him. Lekel returned the greeting and turned his attention back to the lock, at which
     point the man hit Lekel on the head four or five times with an "unknown hard object." Lekel
26   fell to the ground. When he got up he noticed his car, a black Toyota Celica, was missing.
     Lekel called 911.
27

28   ─────────────────
     [1] The victim is referred to as "Lekel" in the appellate court's opinion; however, the correct spelling is "Iekel."

                                            2

1

2          At some point thereafter, police officers saw Lekel's car being driven by an African-American male in the Chinatown area of Fresno. Officers followed the car and, as it headed for an on on-ramp to Highway 99, activated their emergency lights and sirens. At that point, the Toyota sped off, with the officers in pursuit. The Toyota reached speeds of 100 miles per hour as it traveled on Highway 99. Eventually, the driver, attempting to exit the freeway, lost control of the car, which then hit a guardrail and came to rest in a pond. The pursuing officers saw a person swimming near the car and ordered him to stop. The person, later identified as appellant, surrendered and was taken into custody.

3

4

5          Lekel was taken to a hospital, where a CAT scan "revealed [a] fairly extensive right Subdural Hematoma." Lekel also required a blood transfusion.

6

7          At sentencing, the prosecutor represented to the court that Lekel was 67 years old.

8  (Resp't's Answer, Attach. 1.)

9                                    **DISCUSSION**

10  I.      Jurisdiction

11          Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to

12  the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the

13  United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375

14  (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S.

15  Constitution.  The challenged conviction arises out of Fresno County Superior Court, which is located

16  within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

17          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

18  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

19  Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en

20  banc).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by

21  its provisions.

22  II.      Standard of Review

23          Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred

24  unless a petitioner can show that the state court's adjudication of his claim:

25          (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

26

27          (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28  28 U.S.C. § 2254(d); Harrington v. Richter, __ U.S. __, __, 131 S.Ct 770, 784, 178 L.Ed.2d 624

3

1    (2011); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 413.

2    As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal

3    law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28

4    U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look

5    to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the

6    relevant state-court decision." Williams, 592 U.S. at 412. "In other words, 'clearly established Federal

7    law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at

8    the time the state court renders its decision." Id. In addition, the Supreme Court decision must

9    "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a

10   new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is

11   no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d

12   742, 754 (9th Cir.2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v.

13   Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established

14   Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision.

15   Carey, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

16   If the Court determines there is governing clearly established Federal law, the Court must then

17   consider whether the state court's decision was "contrary to, or involved an unreasonable application

18   of," [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)).

19   "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a

20   conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court

21   decides a case differently than [the] Court has on a set of materially indistinguishable facts."

22   Williams, 529 U.S. at 412-13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly

23   understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"

24   Williams, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A

25   state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the

26   state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. If

27   the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision

28   is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th

4

1    Cir.2008) (en banc).

2         "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

3    state court identifies the correct governing legal principle from [the] Court's decisions but

4    unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

5    "[A] federal court may not issue the writ simply because the court concludes in its independent

6    judgment that the relevant state court decision applied clearly established federal law erroneously or

7    incorrectly.  Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538

8    U.S. at 75-76.  The writ may issue only "where there is no possibility fairminded jurists could disagree

9    that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington, 131 S.Ct.

10   at 784.  In other words, so long as fairminded jurists could disagree on the correctness of the state

11   courts decision, the decision cannot be considered unreasonable.  Id.  If the Court determines that the

12   state court decision is objectively unreasonable, and the error is not structural, habeas relief is

13   nonetheless unavailable unless the error had a substantial and injurious effect on the verdict.  Brecht v.

14   Abrahamson, 507 U.S. 619, 637 (1993).

15        Petitioner has the burden of establishing that the decision of the state court is contrary to or

16   involved an unreasonable application of United States Supreme Court precedent.  Baylor v. Estelle, 94

17   F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth

18   Circuit precedent remains relevant persuasive authority in determining whether a state court decision

19   is objectively unreasonable.  See LaJoie v. Thompson, 217 F.3d 663, 669 (9th Cir.2000); Duhaime v.

20   Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

21        AEDPA requires considerable deference to the state courts.  "[R]eview under § 2254(d)(1) is

22   limited to the record that was before the state court that adjudicated the claim on the merits," and

23   "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v. Pinholster, __

24   U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011).  "Factual determinations by state courts are presumed

25   correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340

26   (2003) (citing 28 U.S.C. § 2254(e)(1)).  However, a state court factual finding is not entitled to

27   deference if the relevant state court record is unavailable for the federal court to review.  Townsend v.

28   Sain, 372 U.S. 293, 319 (1963), overruled by, Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).

III.     Review of Claims

A.       Ineffective Assistance of Counsel

Petitioner claims defense counsel rendered ineffective assistance by: (1) failing to inform Petitioner that the victim had identified someone other than him in the photo-lineup; (2) misadvising him of the maximum sentence he faced; (3) failing to secure Petitioner's parole officer as a witness at the sentencing hearing; (4) failing to object to prejudicial statements made by the prosecutor during sentencing; and (5) failing to make an adequate record that the plea bargain Petitioner entered into was made with the understanding that Petitioner would be sentenced to no more than twenty-five years to life.

These claims were presented by habeas petition to the Fresno County Superior Court.  The Fresno County Superior Court denied the claims in a reasoned decision on October 12, 2009. Petitioner then raised the claims to the Fifth DCA.  The Fifth DCA denied the claims without comment.  Petitioner then sought review in the California Supreme Court.  The California Supreme Court denied the claims without comment or citation of authority.  When the California Supreme Court's opinion is summary in nature, the Court must "look through" that decision to a court below that has issued a reasoned opinion.  Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3 (1991).  Here, the Fresno County Superior Court analyzed and rejected the claims as follows:

> Here, petitioner claims that his trial counsel should have advised him of the fact that the victim had failed to pick him out of a photo lineup, that he failed to advise petitioner of the actual amount of time he would have received if he went to trial, that he failed to subpoena petitioner's parole officer to testify at the sentencing hearing, and that he failed to object to hearsay statements made by the prosecutor at the sentencing hearing. However, petitioner has not stated any facts showing that he would have been reasonably likely to obtain a different result if his attorney had not made these alleged errors.
>
> While petitioner claims that the victim's failure to pick him out of a photo lineup means that he had a viable defense at trial, the record shows that there was ample circumstantial evidence that would have supported a conviction, including the fact that petitioner was arrested after he tried to escape from the police in the victim's car.  Petitioner's explanation for being in the car was not particularly credible, since he claimed to have bought or rented the car from another unidentified person for the price of a $10.00 piece of rock cocaine.  Also, the fact that the victim failed to identify petitioner in the lineup is not necessarily exculpatory, since the victim suffered a serious head injury during the assault that could have explained his lack of memory of the attacker.  Thus, there does not appear to be any reasonable likelihood that the jury would have acquitted petitioner if he went to trial, or that he would have received a lighter sentence if he was convicted after trial.

6

Likewise, although petitioner claims that he would not have accepted the plea bargain if his attorney had properly advised him that the maximum sentence he could have received would have been 64 years, petitioner has not stated any facts showing that he would have been likely to prevail if had gone to trial.  As discussed above, there was more than enough evidence to allow a jury to convict without the victim's identification, and the fact that the victim failed to pick the petitioner out of a lineup could have been explained by the victim's serious head injury.

Similarly, counsel's failure to call the parole officer at the sentencing hearing was not prejudicial because the parole officer would have offered only duplicative testimony regarding petitioner's drug abuse and attempts to enter a treatment program, and petitioner has not stated any facts showing that the trial court would have been likely to impose a lighter sentence if the officer had testified.

Also, counsel's failure to object to the prosecutor's statements about the victim identifying petitioner at the sentencing hearing was not prejudicial because petitioner had already pled no contest to all of the charges against him, including the charge that he assaulted the victim and stole his car.

(LD[2] 9.)

The law governing ineffective assistance of counsel claims is clearly established.  Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors.  Harrington v. Richter, supra, 131 S.Ct. at 787; Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 687.  The petitioner must show that "counsel's representation fell below an objective standard of reasonableness," and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances.  Harrington, 131 S.Ct. at 787 (citing Strickland, 466 U.S. at 688); United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington, 131 S.Ct. at 787 (quoting Strickland, 466 U.S. at 687); Sanders v. Ratelle, 21

---

[2] "LD" refers to the documents lodged by Respondent with his response.

1  F.3d 1446, 1456 (9th Cir.1994).

2       Second, the petitioner must demonstrate prejudice, that is, he must show that "there is a

3  reasonable probability that, but for counsel's unprofessional errors, the result ... would have been

4  different," Strickland, 466 U.S. at 694.  "It is not enough 'to show that the errors had some

5  conceivable effect on the outcome of the proceeding.'" Harrington, 131 S.Ct. at 787 (quoting

6  Strickland, 466 U.S. at 693).  "Counsel's errors must be 'so serious as to deprive the defendant of a

7  fair trial, a trial whose result is reliable.'" Harrington, 131 S.Ct. at 787-788 (quoting Strickland, 466

8  U.S. at 687).  A court need not determine whether counsel's performance was deficient before

9  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland,

10  466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not

11  result in prejudice must necessarily fail.

12       Establishing that a state court's application of Strickland was unreasonable under 28 U.S.C. §

13  2254(d) is very difficult. Harrington, 131 S.Ct. at 788.  Since the standards created by Strickland and §

14  2254(d) are both 'highly deferential,' when the two are applied in tandem, review is 'doubly' so.

15  Harrington, 131 S.Ct. at 788 (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).

16       1.      Failure to Advise Petitioner that Victim Identified Another

17       Petitioner first claims defense counsel rendered ineffective assistance by failing to advise

18  Petitioner that the victim had failed to identify him at the initial photo lineup.  Petitioner states that

19  counsel had advised him prior to entry of plea that there was "no viable defense to the charges."

20  (Petition at 5.6.)  Petitioner asserts that he would not have pled no contest had counsel advised him of

21  the victim's failure to identify him.

22       Petitioner raised this claim by habeas petition to the Fresno County Superior Court.  The

23  superior court provided defense counsel with an opportunity to respond to Petitioner's contention.

24  Petitioner's counsel responded by stating:

25       At the time of the assault, victim William Iekel was knocked unconscious and
       was unable to tell police officers in which direction his stolen car had left.  At that time,
26       he was bleeding heavily from a head wound and was disoriented.  Two days later,
       victim Iekel was unable to make a positive identification of defendant Burks who was
27       in position four on a photo line-up that was shown to him.  As a matter of fact, victim
       Iekel indicated that the perpetrator was the person in position 2 but was not sure.  By
28       this time, a CAT scan revealed that victim Iekel had sustained a subdural hematoma

8

and required a blood transfusion. It would not have been unusual for a victim not to have identified his assailant under these circumstances. Furthermore, within minutes of contact with victim Eikel [sic], police officers were able to locate the victim Eikel's [sic] vehicle which was being driven by defendant Burks not far from the scene of the carjacking.

(Petition at 148.)

Respondent correctly notes that defense counsel's explanation is silent on Petitioner's claim that counsel failed to advise him of the lineup identification. In addition, Petitioner does not state how and when he came upon this knowledge himself. Nevertheless, even if counsel had failed to advise him of the victim's failure to identify him, the state court determination that Petitioner was not denied the effective assistance of counsel was not unreasonable, since there is no probability the outcome would have been different had counsel advised him.

First, the victim's failure to identify Petitioner was easily explained. As noted by defense counsel and the superior court, the victim had just suffered a serious head injury that left the victim disoriented. The attending physician stated the victim had a twenty-five percent (25%) probability of dying as a result of the seriousness of the head injury. (CT[3] 83.) A CAT scan showed an extensive subdural hematoma to the right side. (CT 83.) The victim was shown the lineup while he was still in recovery for the injury. Taking these circumstances into account, counsel's determination that the misidentification was of little assistance to the defense was not unreasonable.

Moreover, the circumstantial evidence of Petitioner's guilt was overwhelming. Only minutes after the carjacking, Petitioner was located driving the victim's vehicle approximately one mile from where the vehicle was stolen. (RT 29; CT 33-35; 38-39; 82.) When officers attempted to stop the vehicle, Petitioner evaded the police reaching speeds in excess of 100 miles per hour. (CT 33-35; 83.) The vehicle eventually spun out of control, became airborne, and came to rest in a pond. (CT 33-35; 83.) Petitioner then attempted to flee across the pond, but finally gave himself up once a service dog joined the pursuit. (CT 83.)

Petitioner did not deny being in possession of the stolen vehicle. He provided an explanation that was not credible. He stated he acquired the vehicle from an unknown individual. (CT 83; RT 26-

---

[3] "CT" refers to the Clerk's Transcript on Appeal.

1    27.)  He stated he purchased the vehicle in order to travel to Sears where he wanted to buy

2    merchandise that he could turn around and sell so that he could purchase rock cocaine.  (RT 26-27.)

3    When the court asked Petitioner why he simply didn't use the money to buy cocaine instead of the

4    vehicle, Petitioner did not have a credible reason.  He replied that he didn't have bus fare and didn't

5    want to walk.  (RT 27.)  The court responded that the amount he paid for the car was sufficient to buy

6    bus fare.  (RT 28.)  Petitioner offered no other explanation other than that he wanted to go to Sears to

7    buy merchandise.  (RT 28.)  Based on this, it would not have been unreasonable for the state court to

8    discredit Petitioner's account.

9            Given the circumstances surrounding the identification and Petitioner's implausible account,

10   counsel's conclusion that none of the counts were defensible was not unreasonable.  His decision to

11   forego a defense and opt for a plea bargain was within the wide range of professional reasonable

12   assistance.  In addition, there was no prejudice since there is no reasonable probability that the

13   outcome would have been different. Had the matter proceeded to trial, the victim would have clarified

14   the misidentification by testifying.  During sentencing, the prosecutor noted, "I also want to make

15   clear to the Court that when Mr. Iekel was seated, he brought to my attention when Mr. Burks came in,

16   that he recognized Mr. Burks, and stated that Mr. Burks is the person that he had contacted – or had

17   said hello to on the street just prior to being hit in the head." (RT 28.)  As to Petitioner's version, he

18   would have been impeached with his prior convictions of robbery and attempted residential burglary.

19   (CT 84, 88-90.)  Indeed, the prior robbery conviction was very similar to the instant offense in that

20   Petitioner had tied up his 94 year old great-grandmother and stole from her.  Defense counsel

21   acknowledged this problem, stating: "The only way to make this claim was to have defendant Burks

22   testify in this matter and his prior convictions would have been used to impeach his testimony."

23   (Petition at 147.)

24           In light of the strong evidence of Petitioner's guilt and the circumstances surrounding the

25   identification, there is no probability that an advisement by counsel that the victim had failed to

26   identify Petitioner in the photo lineup would have altered the outcome of the trial.  Accordingly,

27   Petitioner fails to demonstrate that the state court's application of Strickland was unreasonable under

28   28 U.S.C. § 2254(d).  The claim should be rejected.

2.      Failure to Calculate Proper Sentence and Advise Petitioner

In his second and fifth subclaims, Petitioner alleges defense counsel misadvised him that he was facing a maximum term of 139 years to life if he went to trial.  In support of this claim, Petitioner points to the prosecution's discussion of the maximum term of 139 years to life and the fact that defense counsel did not object to the prosecution's calculations.  He further claims counsel represented that he would receive no more than a 25 year to life sentence if he pled no contest, and possibly a non-life sentence if the trial court struck prior convictions.  Petitioner asserts that he entered his plea under duress as a result and would not have pled guilty if he were presented with the correct maximum exposure.

Respondent points out that the change of plea form indicated the maximum sentence Petitioner could receive by pleading no contest was 25 years to life on each count.  (Petition at 142.)  Defense counsel stated that Petitioner knew "that absent a Romero request being granted by the court, he was going to be sentenced to at least 25 years to life *on any of the felony counts being alleged*." (Petition at 143 (emphasis added).)  During the change of plea hearing, the court inquired whether Petitioner understood the consequences of the plea.  The following exchange occurred:

> THE COURT: Also, do you understand the consequences of your plea, including that you could face a maximum of an indeterminate term of 125 years to life, plus 14 additional years, for a total of 139 years to life in prison at the time of sentencing.
> Do you understand that?
>
> THE DEFENDANT: Yes.

(RT 5.)

In fact, Petitioner faced maximum sentences of 25 years to life on each of the five felony counts, plus 14 years for the enhancements.  Under Cal. Penal Code § 654, the sentencing court was required to determine in calculating the sentence whether any of those terms should be stayed because the offenses were based on an indivisible course of conduct.  In this case, the appellate court determined that the counts of assault, carjacking and elder abuse arose out of the same transaction and had the same criminal objective, and therefore two of the sentences should be stayed.  Therefore, after § 654 was applied, the maximum sentence became 64 years to life.  Nevertheless, this does not alter the fact that Petitioner did in fact face a maximum term of 139 years to life prior to the sentencing

11

court's application of § 654.  Counsel may have believed a sentence of 64 years to life would be the likely maximum once the sentencing court applied § 654, but this was no certainty.  As pointed out by Respondent, the court could have concluded that the offenses of assault and elder abuse were not necessary means to the act of carjacking.  The victim was 67 years old, and it is possible that Petitioner, a 40 year old man, could have achieved his goal of carjacking without inflicting such injuries on an elderly person.  In any case, there is no merit to Petitioner's claim since counsel's advisement on the maximum sentence was not erroneous.  For the same reasons, Petitioner fails to demonstrate that he entered his plea unknowingly or involuntarily.

Even if counsel's advice can be considered erroneous, it did not constitute ineffective assistance.  Generally, an attorney's miscalculation or erroneous prediction of a sentence does not render his assistance deficient.  To constitute ineffective assistance of counsel, the defendant must have relied on the attorney's "gross miscalculation of the likely outcome" of the case.  Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir.1986).  In Iaea, the attorney advised the defendant that "there was a good chance of his getting probation if he accepted the plea bargain," and "that the chance of his getting an extended sentence was 'almost zero.'"  Id. at 863.  The attorney's advice was completely erroneous and the defendant was ultimately sentenced to three life terms, two 20-year terms and one 10-year term.  Id. at 863.  The instant case is quite different.  As stated by Respondent, there is little practical distinction between a term of 139 years to life and 64 years to life, or between terms of 64 years to life and 25 years to life.  In each scenario, the petitioner is faced with a life sentence, and any misinformation could only affect when the petitioner would become eligible for parole.  In California, "'a defendant under an indeterminate sentence has no 'vested right' to have his sentence fixed at the term first prescribed by the [parole authority] 'or any other period less than the maximum sentence provided by statute.'"  People v. Wingo, 14 Cal. 3d 169, 182 (1975) (citing In re Lynch, 8 Cal.3d 410, 417 (1972).

In any case, Petitioner must still demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985).  He fails to do so.  The record reflects that during entry of plea, the trial court admonished Petitioner that he was facing a maximum exposure of 139 years to life.

12

Petitioner responded: "I don't think I'll live 50 years so –." (RT 5.) The transcript also reflects that the trial court advised Petitioner that he was being given no promises regarding a possible sentence in return for his plea. (RT 3.) In light of the record, Petitioner has not shown that there is a reasonable probability he would have insisted on going to trial if he had been advised the maximum exposure was 64 years to life.

Accordingly, Petitioner fails to demonstrate that the state court rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law, or that it was an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

3.      Failure to Secure Appearance of Parole Officer

Petitioner next claims counsel failed to secure the appearance of Parole Officer Sabrina Williams at the sentencing hearing. Petitioner states the parole officer would have testified to the problems Petitioner had upon being released from prison, thereby affording the sentencing court some circumstances in mitigation which would call for striking a prior or imposing a lesser term.

Defense counsel responded to this claim as follows:

> [Petitioner] requested that his parole officer, Sabrina Williams, be subpoenaed for the sentencing hearing. An attempt was made but her attendance was not secured. Nevertheless, a stipulation was reached stating that [Petitioner] was addicted to narcotics at the time of the events in this case. The defense hoped that Parole Officer Williams would testify that she denied [Petitioner's] plea to enter an in-patient rehabilitation program. The contention would have been that these crimes would not have occurred if [Petitioner's] addiction problems were addressed. When Judge Orozco pronounced sentence on this case the court was aware of [Petitioner's] drug usage and that it may have contributed to the commission of these crimes.

(Petition at 148.)

The record shows that defense counsel did in fact attempt to subpoena the parole officer as reflected in the record:

> [M]y client has requested me to try and secure the attendance of his parole officer, Sabrina Williams, for the proposition that Mr. - - Mr. Burks is a drug addict, and he did not sit on that addiction and he - - he informed the parole office of this and I think both counsel and I have tried to secure the attendance of Ms. Williams in that regard. We were unsuccessful, perhaps the best way to describe it is because of the inner office politics at the parole office and I - - they - - and we were told that we should formally subpoena Ms. Williams, and I'm willing to do that, we'll waive time so we're able to do that.

(RT 12.)

13

A continuance was granted and sentencing was reset for August 21, 2006.  (RT 13.)  On

August 21, 2006, defense counsel stated he was in possession of a copy of the subpoena and he had

contacted the parole officer regarding the subpoena, however, the parole officer stated she never

received it. (RT 14.)  Since the parole officer failed to attend, the parties agreed to stipulate to the

testimony she would have provided.  Defense counsel argued the following:

> As to the representations that are supposed to have been made by Ms. Williams, it is as follows.  My client has gone to her, his parole officer, several times in connection with the addiction to the use of cocaine.  On one occasion, Ms. Williams offered my client the King of Kings, and my client told her that he had a personal relationship - - a prior personal relationship with one of the people at the King of Kings, which would have affected the recovery that would have been necessary.  And after that, no further referrals were made by Ms. Williams as to Mr. Burks.

> . . . .

> One of the things the Court can do - - and the Court has great discretion in connection with this matter, is it may exercise Romero discretion. . . .  We're requesting that the Court strike these strike priors in the interests of justice.

> I think it is conceded I think by everybody concerned, at least, that the crimes that are committed here were drug induced and related.

(RT 17-18.)

Petitioner also personally addressed the court and stated that he had advised his parole officer

of his drug problems but his parole officer had refused his requests for a drug treatment program.  (RT

20-21.)

The state court rejected Petitioner's claim of ineffective assistance finding no prejudice.

Specifically, the court found that the parole officer would have offered only duplicative testimony, and

determined that Petitioner had failed to show the court have been likely to impose a lighter sentence

had the officer testified. (LD 9.)

The state court's determination was not unreasonable.  As shown above, defense counsel made

a reasonable effort to secure the appearance of the parole officer.  Moreover, Petitioner fails to

demonstrate any prejudice.  The facts that the parole officer would have provided were presented to

the court by stipulation of the parties, by defense counsel and by Petitioner.  The testimony of the

parole officer would have been cumulative.  Petitioner fails to demonstrate that the state court's

adjudication of the claim was contrary to, or an unreasonable application of, federal law, or was an

14

1   unreasonable determination of the facts.  The claim should be rejected.

2       4.      Failure to Object to Prejudicial Statements of the Prosecutor

3       Petitioner next claims defense counsel rendered ineffective assistance when he failed to object

4   to the prosecutor's remark that the victim had identified Petitioner in court as the person who had said

5   hello to him directly before he was attacked from behind.  Petitioner asserts this failure was prejudicial

6   insofar as it undermined Petitioner's claim of innocence.

7       The record reflects that during sentencing, after Petitioner had been given an opportunity to

8   address the court, the prosecutor stated the following:

9           First I would like to note that Mr. Iekel, William Iekel is present in court, Your
            Honor, he's with the assistance of Victim Services.  He does not wish to address the
10          Court, but did want to be present.  He wished for me to convey to the Court that in
            terms of a recommendation of sentence, he doesn't have a specific one in mind, but he
11          does not want this defendant to be in a position to repeat this offense or harm anyone in
            the future.  I've assured him that I would represent that to the Court; and I have done
12          so.

13          I also want to make clear to the Court that when Mr. Iekel was seated, he
            brought to my attention when Mr. Burks came in, that he recognized Mr. Burks, and
14          stated that Mr. Burks is the person that he had contacted - - or had said hello to on the
            street just prior to being hit in the head.  That was while others were in line, and for
15          whatever that is worth, I would submit that as the representation of Mr. Iekel.

16  (RT 28.)

17      The state court found no prejudice resulting from counsel's alleged failure since Petitioner had

18  already pled to the charges.  Because Petitioner had already pled to the charges, the identity of the

19  perpetrator was no longer at issue.  For this reason also, counsel cannot be faulted for failing to object

20  insofar as counsel cannot be faulted for failing to make a futile objection. Juan H. v. Allen, 408 F.3d

21  1262, 1273 (9th Cir.2005).  In addition, as the state court found, Petitioner cannot show prejudice since

22  there "was more than enough evidence to allow a jury to convict without the victim's identification."

23  (LD 9.)  Accordingly, this claim of ineffectiveness should also be denied.

24      In sum, as Petitioner concedes in his Traverse, "any single event complained of herein does not

25  traverse the threshold of incompetence." (See Traverse at 9.)  Nor can the totality of counsel's

26  performance be considered incompetent representation, since as discussed above, none of the alleged

27  failures constituted error.  In addition, Petitioner fails to demonstrate prejudice resulting from the

28  alleged errors.  Petitioner fails to show that the state court's adjudication of the claim was contrary to,

15

1    or an unreasonable application of, federal law, or was an unreasonable determination of the facts.  The

2    claim should be rejected.

3    B.      Improper Sentence

4          Petitioner claims the trial court imposed a sentence of 64 years to life in violation of his plea

5    agreement.  He states the plea agreement reflected a maximum sentence of 25 years to life.  He also

6    claims the trial court improperly relied on the representation that the maximum term was 139 years to

7    life.  He alleges he would have received a lesser sentence had the trial court understood that the

8    maximum sentence was actually 64 years to life.

9          Like his previous claims, this claim was first presented by habeas petition to the Fresno County

10   Superior Court where it was denied in a reasoned decision.  He then presented it to the Fifth DCA and

11   the California Supreme Court, but both courts denied the claim without comment.  In such a case, the

12   Court must review the last reasoned decision.  Here, the superior court provided the last reasoned

13   decision:

14                    [W]hile petitioner contends that the trial court violated his plea agreement by
                 imposing a sentence of 64 years to life when he signed an agreement for a 25 year to
15               life sentence, the record shows that the trial court advised petitioner of the
                 consequences of his plea agreement and the total amount of time to which he might be
16               sentenced under the agreement.  Therefore, petitioner has not shown that he was not
                 aware of the consequences of his plea bargain, or that the trial court violated his rights
17               when it imposed a sentence higher than 25 years to life.

18   (LD 9.)

19         A plea of guilty is constitutionally valid only to the extent it is "voluntary" and "intelligent."

20   Brady v. United States, 397 U.S. 742, 748 (1970). In determining whether a plea was knowingly,

21   voluntarily and intelligently made, a reviewing court must accord a strong presumption of verity to the

22   declarations made by a defendant in open court.  Blackledge v. Allison, 431 U.S. 63, 74 (1977).

23   "[R]epresentations [made by] the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well

24   as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent

25   collateral proceedings." Id. at 73-74.  In addition, due process requires that the terms of a plea

26   agreement be enforced.  Santobello v. New York, 404 U.S. 257 (1971).

27         In this case, it is clear that Petitioner's sentence did not violate the terms of his plea agreement,

28   or that Petitioner was misled regarding his maximum sentence exposure so as to render his plea

unknowing and involuntary.  As previously discussed, the maximum sentence exposure was 139 years to life.  The plea form indicated a maximum sentence of 25 years to life.  (Petition at 139.)  However, as explained by defense counsel, the maximum sentence of 25 years to life applied to "any of the felony counts being alleged."  (Petition at 148.)  According to defense counsel, Petitioner's best hope to avoid life sentences on any of the counts was for the sentencing court to exercise its <u>Romero</u>[4] discretion and reduce his sentence.  (Petition at 147-148.)  Defense counsel stated Petitioner was aware of these facts during entry of plea.  (Petition at 148.)

The transcript of the change of plea hearing reflects Petitioner knew he was pleading to a possible maximum sentence of 25 years to life on each of the five counts.  (RT 2, 5.)  Petitioner further stated he understood that no promises of a specific sentence were given by either the court or the government.  (RT 2-3.)  The court stated it would take a "long, hard look" at Petitioner's letter and give due consideration to Petitioner's comments when exercising its <u>Romero</u> discretion.  (RT 2-3.)  The fact that Petitioner knew he could be sentenced beyond 25 years to life is evident from his remark when advised he could be sentenced to as much as 139 years to life: "I don't think I'll live 50 years so - -." (RT 5.)

Therefore, there is no merit to Petitioner's claim that his plea bargain was breached when he was sentenced to a term of 64 years to life.  This was within the sentencing range understood by Petitioner and contemplated in the plea form.

There is also no merit to Petitioner's claim that the court improperly calculated his maximum sentence.  As previously stated, he faced terms of 25 years to life on each of the five felony counts, plus 14 years in enhancements, for a total maximum exposure of 139 years to life.  Whether any of the sentences would be stayed or ran concurrent was subject to the discretion of the sentencing court during sentencing, as agreed to by Petitioner.

In sum, Petitioner fails to demonstrate that he entered his plea unknowingly and involuntarily, or that the trial court miscalculated the maximum sentence exposure.  Therefore, the state court rejection of the claim was not contrary to, or an unreasonable application of, Supreme Court

---

[4] <u>People v. Superior Court (Romero)</u>, 13 Cal.4th 529-30 (1996) (holding that trial courts retain discretion to dismiss prior strikes in the interests of justice pursuant to Cal. Penal Code § 1385).

1  precedent, or an unreasonable interpretation of the facts.  The claim should be denied.

2  C.      Ineffective Assistance of Appellate Counsel

3          In his final claim for relief, Petitioner alleges his appellate counsel rendered ineffective

4  assistance by failing to assert that the trial court miscalculated the maximum exposure, or that the 64

5  years to life sentence violated the terms of the plea bargain.

6          This claim was also presented by habeas petition to the Fresno County Superior Court, where it

7  was denied in a reasoned decision.  He then raised the claim to the appellate court and California

8  Supreme Court, and the claim was summarily rejected by both courts.  Therefore, the Court looks to

9  the opinion of the Fresno County Superior Court as the last reasoned decision.  The superior court

10  determined appellate counsel did not render ineffective assistance because the underlying claims were

11  completely without merit.  The plea agreement was not violated because Petitioner's 64 years to life

12  sentence was within the range set forth on the plea form and in open court.  Further, the maximum

13  sentence exposure of 139 years to life was not erroneously calculated.

14          Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the

15  Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

16  assistance of appellate counsel are reviewed according to Strickland's two-pronged test.  Miller v.

17  Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th

18  Cir.1986).  The presumption that counsel acted reasonably is even stronger for appellate counsel

19  because he has wider discretion than trial counsel in weeding out weaker issues; doing so is widely

20  recognized as one of the hallmarks of effective appellate assistance.  Miller v. Keeney, 882 F.2d 1428,

21  1434 (9th Cir.1989).

22          In this case, the state court properly found appellate counsel did not render ineffective

23  assistance.  As previously discussed, the plea bargain was not breached since Petitioner was sentenced

24  to a term within the range set forth on the plea form and as stated by Petitioner in open court.  Further,

25  the court did not mislead Petitioner or miscalculate the sentence since the maximum sentence exposure

26  Petitioner faced was 139 years to life.  Appellate counsel was not unreasonable in eschewing these

27  claims insofar as the claims were meritless, and failure to raise a meritless legal argument does not

28  constitute ineffective assistance of counsel.  Shah v. United States, 878 F.2d 1156, 1162 (9th

Cir.1989); <u>Jones v. Barnes</u>, 463 U.S. 745, 754 (1983) (appellate counsel must exercise professional judgment in selecting issues to be raised on appeal and does not have the duty to raise every claim suggested by a client).

Petitioner fails to show that the state court denial of this claim was contrary to, or an unreasonable application of, Supreme Court law.  The claim should be rejected.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 16, 2013**          **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE